# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RODNEY L. B.,[1]                               )
                                              )
        **Plaintiff,**                        )
                                              )      **CIVIL ACTION**
**v.**                                         )
                                              )      **No. 21-1162-JWL**
KILOLO KIJAKAZI, [2]                           )
**Acting Commissioner of Social Security,**     )
                                              )
        **Defendant.**                       )
_____           )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

I.      **Background**

Plaintiff protectively filed applications for DIB and SSI benefits on August 8, 2019 and August 20, 2019, respectively.  (R. 19, 180, 190).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ's residual functional capacity (RFC) is not supported by substantial evidence, and she erred at step five in finding jobs available in the national economy in significant numbers to an individual with the RFC assessed.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses the errors alleged in Plaintiff's Social Security Brief. Although this is a close case, the court finds the ALJ applied the correct legal standard, her rationale may be ascertained from her decision, and substantial record evidence supports that decision.  Because the court may not decide the issue of disability de novo, it affirms the decision below.

## II.    RFC

Plaintiff had an ATV accident in 2013 in which his right shoulder humeral head fractured and after which he required surgery to replace the right shoulder humeral head with a prothesis.  (R. 441).  After recovery from this surgery, he returned to work as a

4

tractor-trailer driver and in 2018 he was in a rollover accident in a truck in which his right shoulder was again injured, and he has not worked since that time.  (R. 440).  He notes the ALJ's RFC finding he "can lift and/or carry 20 pounds occasionally and 10 pounds frequently" and "can push and pull to the same weights with the left upper extremity but may never push, pull, handle and reach in any direction including overhead with the dominant right upper extremity."  Id. at 23 (finding no.5. bold omitted).  He notes the vocational expert's (VE) testimony at the hearing that an individual who can lift or carry less than 10 pounds with the dominant right upper extremity would not be able to perform any jobs in the national economy.  (Pl. Br. 9) (citing R. 67).  He then argues, "Common sense dictates that an individual unable to push, pull, handle or reach in any direction with an arm, would also be unable to lift 10 pounds with that arm."  Id. Plaintiff also argues the ALJ erroneously failed to include limitations due to his symptoms of pain, shortness of breath, inability to focus, and limited education.

The Commissioner argues substantial evidence supports the ALJ's RFC assessment because she "was persuaded by most of the medical opinions and prior administrative medical findings,[3] which reached the same conclusion [and she] found that Plaintiff's reported symptoms were inconsistent with other evidence."  (Comm'r Br. 7). The Commissioner points to the medical opinions the ALJ found persuasive and notes the

---

[3] The court recognizes that the evaluations performed by state agency physicians and psychologists are properly called prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).  However, they are evaluated in the same manner and by the same standards as medical opinions and are commonly called medical opinions. 20 C.F.R. §§ 404.1520c, 416.920c.  The court follows the common practice hereinafter.

RFC is consistent with them.  (Comm'r Br. 8-9).  She argues this is substantial record evidence supporting the RFC assessed.  Id.  She argues Plaintiff did not make a reasoned argument claiming error in the ALJs evaluation of the medical opinions but, rather, argues it is not rational or "common sense" to assess the RFC limitations assessed by the ALJ despite that those limitations were also assessed in the medical opinions the ALJ found persuasive.  Id. at 9 (citing Pl. Br. 9).

The Commissioner argues that an "ALJ's credibility and RFC determinations are inherently intertwined."  Id. 10 (quoting Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009)).  She argues that because the ALJ found Plaintiff's allegations of disabling symptoms are inconsistent with the record evidence, she properly discounted Plaintiff's allegations of symptoms and did not include RFC limitations related to those allegations and that the ALJ's evaluation of symptoms "is due 'particular deference' by the Court [sic]."  Id. at 10-11 (quoting White, 287 F.3d at 910).  The Commissioner points to the ALJ's reliance on "Plaintiff's ability to help with laundry and operate a motor vehicle," and argues, "The ALJ reasonably found that such activities—which [are] not terribly strenuous—were inconsistent with Plaintiff's reports of debilitating pain and other symptoms."  Id. 11.  She concludes that in his opening brief Plaintiff failed to challenge the ALJ's rationale for the RFC assessed, thereby waiving such arguments and "should not be allowed to end-run his waiver by presenting arguments on this point in a reply brief."  Id. 12 (citing Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000)).

In his Reply Brief, Plaintiff reiterates his earlier RFC argument.  (Reply 2).  He then argues, contra the Commissioner's alleged assertion "that state agency contractors

are "highly qualified" experts," that "Disability examiners' findings by a state agency about a medical issue, vocational issue, or the ultimate determination of disability are "inherently neither valuable nor persuasive…"  (Reply 2) (citing "20 C.F.R. 404.6149(c) and (2) [sic] and 20 C.F.R. 404.1520b").  He asserts, "Although no one medical opinion can be controlling, the agency favors medical opinions given by medical sources with treating relationships and familiarity with claimant's [sic] and their conditions over time; treating physicians also have the benefit of medical evidence submitted after state consultants' opinions."  Id. (citing 20 C.F.R 404.1250c).

Plaintiff argues the Commissioner is wrong to assert that he has "limited use" of his right arm and argues, "His inability to push, pull, handle and reach in any direction including overhead with the dominant right upper extremity is not 'limited use.'  It is 'no use.'"  Id. at 3 (citing R. 23).  He argues he cannot lift any weight with his right hand.  Id. He argues his alleged symptoms are not inconsistent with the record, the ALJ found he has severe impairments which significantly limit his ability to perform basic work activities, his symptoms are not an issue of credibility, and he has not waived argument that his symptoms support a more restrictive RFC.  Id. 4.  He argues that "Social Security disability applicants can raise any issue at any level."  Id. (citing Carr v. Saul, 593 U.S. ___, ____; 141 S.Ct. 1352, 1359 (2021)).

Plaintiff argues that his "testimony that he can do a few [daily activities] is far from 'an undercut' of his symptoms."  Id. 5.  He argues the Court's decision in Carr precludes the Commissioner's argument that he should not be allowed to challenge the ALJ's rationale for his RFC assessment for the first time in his Reply Brief and he:

has asserted his inability to work due to all of his conditions [and] symptoms and pursuant to the Social Security Administration's regulations and applicable authority.  As the disability process is intended to be a non-adversarial process, focused on finding whether a claimant is disabled, Defendant's animosity is puzzling and unwarranted.

(Reply 5).

### A.    Standards for Assessing RFC, Plaintiff's Alegations of Symptoms, and Medical Opinions

The Commissioner has promulgated regulations regarding assessment of RFC.  20 C.F.R. §§ 404.1545-1546, 416.945-946.  RFC is an assessment of the most a claimant can do despite his limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC assessment will be made "based on all the relevant evidence in your case record."  Id. The Commissioner has provided examples of the types of evidence required to be considered in making an RFC assessment; including medical history, medical signs and laboratory findings, and medical source statements.  Soc. Sec. Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2022).

In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite his impairment(s).  20 C.F.R. §§ 404.1545, 416.945.  The assessment is to be based upon all relevant medical and other evidence in the record and is to include consideration of the limitations caused by all the claimant's impairments, including impairments which are not "severe" as defined in the regulations.  Id. at §§ 404.1545(a & e), 416.945(a & e).  The assessment is to consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and

carrying out instructions; responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments.  Id. §§ 404.1545(b,c,d), 416.945(b,c,d); see also §§ 404.1521, 416.921 (listing examples of basic work activities which may be affected by impairments).  At the ALJ hearing level, it is the ALJ's responsibility to assess RFC.  Id. §§ 404.1546(c), 416.946(c).

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits."  West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2022).  The Ruling includes narrative discussion requirements for the RFC assessment.  Id. at 149.  The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the Plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id.  The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  The narrative discussion must include consideration of the credibility of Plaintiff's allegations of symptoms and consideration of medical opinions regarding Plaintiff's capabilities.  Id. at 149-50.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion.  Id. at 150.

An ALJ's credibility determination is intertwined with the RFC assessment. Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009).  Her evaluations of a claimant's

9

allegation of symptoms are generally treated as binding on review.  Talley v. Sullivan,

908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir.

1983).  Such "determinations are peculiarly the province of the finder of fact" and will

not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144;

accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's evaluations, the

court will usually defer to the ALJ on matters involving witness allegations.  Glass v.

Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  However, such findings "should be closely

and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings."  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133

(10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for considering subjective allegations

regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)

(dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact
> disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[4]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for

---

[4] Luna, Thompson, and Kepler were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1529, 416.929).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. Appx. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on December 18, 2020, when this case was decided.  Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

The regulations include a section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  20 C.F.R. §§ 404.1520c, 416.920c.  That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a). The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(c)(1-5), 416.920c(c)(1-5).  It provides that the most important factors in evaluating persuasiveness are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The articulation requirement applies for each source, but not for each opinion of that source separately.  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not

required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

### B.     The ALJ's Relevant Findings

The ALJ found Plaintiff has a severe combination of impairments: "obesity, right shoulder humeral head fracture with prosthesis placed, right shoulder rotator cuff tear, sternochondritis and costcochronritis, [sic] frozen shoulder syndrome and chronic obstructive pulmonary disease (COPD)." (R. 21) (finding no. 3, bold omitted). She applied the Commissioner's psychiatric review technique (PRT) outlined in 20 C.F.R. §§ 404.1520a and 416.920a and found that Plaintiff's medically determinable mental impairment, anxiety disorder, is not severe within the meaning of the Act and the regulations. Id. at 22-23.

The ALJ assessed Plaintiff with the RFC to perform light work with the following limitations:

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, can stand or walk in combination for 6 hours in an 8-hour workday with normal breaks, and can sit for 6 hours in an 8-hour workday with normal breaks. The individual can push and pull to the same weights with the left upper extremity but may never push, pull, handle and reach in any direction including overhead with the dominant right upper extremity (RUE). The individual may never climb ladders, ropes and scaffolds, and may never crawl. The individual may not be exposed to vibration and hazards such as unprotected heights and machinery with moving mechanical parts. The individual can have occasional exposure to fumes, odors, dusts, gases, poor ventilation and other pulmonary irritants.

Id. 23 (finding no. 5, bold omitted).

13

The ALJ stated she had applied 20 C.F.R. §§ 404.1520c, 404.1529, 416.920c, and 416.929 and SSR 16-3p in evaluating Plaintiff's allegations of symptoms and the medical opinions of record. (R. 23). She found Plaintiff's allegations "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. 25. The ALJ noted in treatment records regarding Plaintiff's lifting ability that he

> reported that he was able to lift only limited weights (Exhibit 13F at 2, [R. 428]). Moreover, he reported that he was not able to shampoo his hair with his right arm. On the other hand, the claimant reported that he was able to help with laundry. The provider further noted the claimant's report that he was able to operate a motor vehicle (Exhibit 13F at 13, [R. 439]).

Id. 26. She concluded:

> The medical evidence of record does not dispute that the claimant has conditions, which singly or in combination, may cause her [sic] pain or other difficulties. What the evidence indicates, however, is that the claimant's symptoms may not be accurately reported, may not exist at the level of severity assumed by the claimant's testimony at hearing and may have other mitigating factors against their negative impact on the claimant's ability to engage in work activity.

Id.

The ALJ evaluated the record medical opinions and explained how persuasive she found them. Id. 26-27. She found the opinions of the state agency psychological consultants, Dr. Isenberg and Dr. Sen, "are persuasive because the evidence supports the opinion that the claimant's mental impairments are nonsevere. There is no evidence of more than minimal limitations due to the claimant's mental impairments." Id. 26. She found the opinion of the state agency medical consultant, Dr. O'Day, only somewhat

persuasive because he did not provide limitations consistent with Plaintiff's breathing disorder—COPD—and she explained she had added a limitation to only occasional pulmonary irritants.  (R. 27).  She found the opinion of the other state agency medical consultant, Dr. Braverman, "persuasive because the limitations therein are explained and are consistent with the medical evidence of record discussed above showing that he has a frozen shoulder with a rotator cuff tear, with manifestations that include decreased range of motion and some muscle atrophy."  Id.

The ALJ found Dr. Carabetta's opinions generally not persuasive because it was based on workers compensation criteria which are different fron Social Security criteria. However, she noted they "do provide support for the above work restrictions limiting the claimant's ability to lift and/or carry."  Id.  She also found Dr. Do's opinion unpersuasive because it was based on criteria different from the SSA disability regulations.  Id.

She found Dr. Fevurly's opinion "persuasive because the opinion is supported by the examination findings therein and consistent with the overall medical evidence of record" which revealed "limited range of motion, decreased strength, and atrophy in the right shoulder."  Id.  She explained her evaluation of Dr. Murati's opinions:

> the opinion of Pedro Murati from April 2019 is not persuasive because the opinion provides only temporary work restrictions.  On the other hand, the undersigned finds that the January 2020 opinion is generally persuasive, however, Dr. Murati's restrictions on the claimant's ability to sit is not supported by examinations of the claimant.  Moreover, the term awkward positions of the neck is not quantified.

Id. (citations omitted).

The ALJ found the opinion of Ms. Bolan, PA-C unpersuasive because she did not quantify her restrictions.  (R. 27).  She also explained her evaluation of Dr. Schowengerdt's opinion:

> The undersigned finds that the opinion of the claimant's treatment provider Daniel Schowengerdt, M.D. is not persuasive because he is the only one who opines that the claimant can only lift and carry less than 10 pounds occasionally and frequently.  The undersigned noted that Dr. Schowengerdt has a long treating relationship with the claimant for pain management. However, his treatment notes and examinations are not as detailed as those of the other providers who examined the claimant.  Accordingly, those other opinions are afforded greater weight.  Dr. Schowengerdt posits that the claimant has no abduction and limited forward flexion with shoulder dislocation.  This is not consistent with other examinations in the record showing that the claimant is able to exhibit some degree of abduction.  In any event, the above residual functional capacity assessment limits the claimant to no reaching on the right side.

Id. (citations omitted).

### C.    Analysis

The court will first address Plaintiff's apparent misapprehensions regarding the legal standards applicable to the Commissioner's evaluation of a claimant's application for disability benefits and this court's review of the Commissioner's decision.  In his Reply Brief, Plaintiff appears to argue that opinions of the state agency medical and psychological consultants' such as Drs. Isenberg, Sen, O'Day, and Braverman, carry no persuasive value because the regulations note disability examiner findings are listed among the evidence the Commissioner has determined is "inherently neither valuable nor persuasive."  20 C.F.R. §§ 404.1520b(c)(2), 416.920b(c)(2).  State agency medical and psychological consultants are different from state agency disability examiners.  Although both are experts in their areas of the disability determination process established by the

16

SSA, they have overlapping responsibilities in that process.  In the mine run of cases a disability determination is made by a state agency medical or psychological consultant and a state agency disability examiner working together and a disability examiner alone may make a disability determination "when there is no medical evidence to be evaluated … and the individual fails or refuses, without a good reason, to attend a consultative examination."  20 C.F.R. §§ 404.1615, 416.1015.  When a state agency medical or psychological consultant and a state agency disability examiner together make the disability determination in the agency's initial and reconsideration determinations, as was the case here, the state agency medical or psychological consultant is responsible for assessing RFC.  Id. §§ 404.1546, 416.946.  The findings by the state agency medical or psychological consultants about a medical issue regarding the existence and severity of impairments or symptoms, whether the claimant's impairments meet or medically equal a Listing, the claimant's RFC, whether the duration requirement is met, and how failure to follow prescribed treatment or drug addiction and alcoholism relate to the claim, are defined as a "prior administrative medical finding."  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).  It is such prior administrative medical findings that are required to be evaluated by the ALJ in the same manner as are medical opinions.  Id. §§ 404.1520c, 416.920c.  Thus, it is appropriate for the ALJ to evaluate the opinions of these state agency consultants and assess the persuasiveness she accords to each.

Plaintiff also cites to 20 C.F.R. § 404.1520c for the proposition that, "Although no one medical opinion can be controlling, the agency favors medical opinions given by medical sources with treating relationships and familiarity with claimant's [sic] and their

conditions over time; treating physicians also have the benefit of medical evidence

submitted after state consultants' opinions." (Reply 2). That is simply not correct. That

proposition is generally in accord with the treating physician rule applicable to cases filed

before March 27, 2017. 20 C.F.R. §§ 404.1527, 416.927. However, the regulations

changed effective March 27, 2017 for cases filed then or thereafter. See, e.g., 20 C.F.R.

§§ 404.1513, 404.1520c, 416.913, 416.920c. In making this change, the Commissioner

explained:

> To account for the changes in the way healthcare is currently delivered, we
> are adopting rules that focus more on the content of medical opinions and
> less on weighing treating relationships against each other. This approach is
> more consistent with current healthcare practice.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-

01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) (emphasis added).

> By moving away from assigning a specific weight to medical opinions, we
> are clarifying both how we use the terms "weigh" and "weight" in final
> 404.1520c(a), 404.1527, 416.920c(a), and 416.927 and also clarifying that
> adjudicators should focus on how persuasive they find medical opinions
> and prior administrative medical findings in final 404.1520c and 416.920c.
> Our intent in these rules is to make it clear that it is never appropriate under
> our rules to "credit-as-true" any medical opinion.

Id., 5,858.

> Courts reviewing claims under our current rules have focused more on
> whether we sufficiently articulated the weight we gave treating source
> opinions, rather than on whether substantial evidence supports our final
> decision. As the Administrative Conference of the United States' (ACUS)
> Final Report explains, these courts, in reviewing final agency decisions, are
> reweighing evidence instead of applying the substantial evidence standard
> of review, which is intended to be highly deferential standard [sic] to us.

Id., 5,853.

Because the ALJ applied the correct legal standard in assessing RFC, including her evaluation of Plaintiff's allegations of disabling symptoms and her evaluation of the persuasiveness of the medical opinions, the remaining question for the court is whether substantial record evidence—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion—supports the ALJ's RFC findings.  The court finds it does.

Plaintiff is correct the ALJ found both that he "can lift and/or carry 20 pounds occasionally and 10 pounds frequently" and that he "can push and pull to the same weights with the left upper extremity but may never push, pull, handle and reach in any direction including overhead with the dominant right upper extremity."  Id. at 23 (finding no.5. bold omitted).  He is also correct that the VE testified that an individual who can lift or carry less than 10 pounds with the dominant right upper extremity would not be able to perform any jobs in the national economy.  (R. 67).  However, he is incorrect to assume that these premises compel the conclusion "that an individual unable to push, pull, handle or reach in any direction with an arm, would also be unable to lift 10 pounds with that arm."  (Pl. Br. 9).  While such a conclusion might appear to be "common sense" to a layman such as Plaintiff, his counsel, or even this court, that is not what the record evidence reveals in this case.

The ALJ found Dr. Murati's January 2020 opinion "generally persuasive" (R. 27), the reasons given for doing so are supported by the record evidence, Plaintiff does not provide argument or evidence compelling a contrary finding, and the court finds no such evidence.  Dr. Murati opined Plaintiff cannot climb ladders, squat, or crawl, and cannot

perform heavy grasp (>40kg) or above chest level work with his right hand.  (R. 467).

He found Plaintiff unable to lift/carry or push/pull greater than 20 pounds and is limited

to 20 pounds occasionally and 10 pounds frequently.  Id.  She found Dr. Braverman's

opinion persuasive.  Id. at 27.  Plaintiff's objection to Dr. Braverman's opinion (that it

was inherently neither valuable nor persuasive) was rejected above by this court and the

ALJ's reasons for finding that opinion persuasive are supported by the record evidence.

Dr. Braverman opined Plaintiff can lift and carry 20 pounds occasionally and 10 pounds

frequently but that he can never push or pull with the right upper extremity, can never

crawl, and can never reach overhead or handle with the right upper extremity.  (R. 98-

99).  The ALJ found Dr. Carabetta's opinion "generally not persuasive" but noted that it

provides "support for the above work restrictions limiting the claimant's ability to lift

and/or carry as reflected in the residual functional capacity."  Id. at 27.  As the ALJ's

finding suggests, Dr. Carabetta opined, "[Plaintiff's m]aximum occasional lifting with the

right upper extremity should not exceed 20 pounds.  More frequent lifting or carrying

should not be more than 10 pounds."  (R. 488).  The ALJ found Dr. Fevurly's opinion

persuasive, provided reasons for that finding which are supported by the record evidence,

and Plaintiff provides no compelling reason to reach a different conclusion.  Dr. Fevurly

provided his opinion regarding Plaintiff's "Permanent Restrictions and Limitations:"

> current and preexisting restrictions include no above shoulder reach with
> the right arm, no forceful push/pull with the right arm, lifting limited to 20
> pounds to chest level with both arms on an occasional basis.

(R. 452).

As the ALJ noted, the only medical care provider "who opines that the claimant can only lift and carry less than 10 pounds occasionally and frequently" was Dr. Schowengerdt.  (R. 27).  As noted above, several medical professionals opined that Plaintiff was limited in pushing, pulling, reaching, and handling with the right arm but also opined that he was able to lift and carry 20 pounds occasionally and 10 pounds frequently.  Thus, it is clear that Plaintiff is not limited to lift less than 10 pounds with his right upper extremity except in Dr. Schowengerdt's opinion, which the ALJ properly found unpersuasive.

The above discussion makes it equally clear that the record evidence supports the ALJ's finding that Plaintiff "should be limited consistent with the above residual functional capacity assessment" (R. 28), and the Commissioner's argument in her Brief that Plaintiff has "limited use" of his right upper extremity.  Counsel's argument in Plaintiff's Reply Brief that his limitations in pushing, pulling, reaching, and handling are equivalent to "no use" is not supported by the record.  In fact, the court finds no evidence in the record, including an assertion by Plaintiff, that he has no use of his right upper extremity.

In a single paragraph in his Brief, Plaintiff cites his other symptoms and argues, "The ALJ failed to adequately consider [sic] the debilitating effects of [Plaintiff's] anxiety, insomnia, dizziness and fatigue caused by side effects from his medications and his inability to focus and limited education."  (Pl. Br. 9-10) (citations omitted).  However, beyond stating his symptoms and the apparent cause, Plaintiff does not cite to evidence compelling a finding the symptoms are not accommodated by the RFC assessed.  The

21

ALJ stated she considered Plaintiff's alleged symptoms in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p.  (R. 23).  For the next page-and-a-quarter the ALJ discussed the standard for evaluating Plaintiff's allegations of symptoms and Plaintiff's alleged symptoms and stated her conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Id. 25.  Clearly the ALJ considered Plaintiff's allegations of symptoms, and Plaintiff has not shown that consideration was inadequate.

In Plaintiff's addressing the ALJ's evaluation of his allegations of symptoms (colloquially a credibility determination) in his Reply Brief, he argues that his symptoms are not inconsistent with the record, he finds no evidence inconsistent with his reports of symptoms, they are not an issue of credibility, and he has not waived argument that they could support a more restrictive RFC.  (Reply 4).  Then Plaintiff argues, for the first time, that his ability to perform a few household tasks does not undercut his reported symptoms because "this Court [sic] has held that such sporadic tasks do not indicate the ability to perform those tasks at a competitive SGA [(significant gainful activity)] level."  Id. at 4-5 (without citation to authority).

The court presumes Plaintiff reference to a few household tasks is in response to the Commissioner's citation to the ALJ's reliance on "Plaintiff's ability to help with laundry and operate a motor vehicle.  The ALJ reasonably found that such activities— which [are] not terribly strenuous—were inconsistent with Plaintiff's reports of debilitating pain and other symptoms."  (Comm'r Br. 11) (citation omitted).  As the

22

Commissioner pointed out, these two nonstrenuous activities tend to detract from Plaintiff's allegations of extreme limitations in the use of his right upper extremity. There is no error in the ALJ's reliance here.  Beyond this single example, Plaintiff points to no error in the ALJ's credibility finding and points to no evidence compelling a different finding.  Elias-Zacarias, 502 U.S. at 481, n.1 (to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it.").  Plaintiff has not met his burden to show error in the ALJ's evaluation of his allegations of symptoms or in her RFC assessment.

## III.    The Step Five Determination of Available Jobs

Plaintiff argues the jobs the VE testified are available to an individual with the age, work experience, and RFC of Plaintiff "do not exist in the national economy or do not exist in significant full-time employment numbers."  (Pl. Br. 10).  He argues, "The VE did not explain how [an individual such as Plaintiff working as a school] Bus Monitor would secure the wheelchair inside the vehicle using only one hand."  Id. 12.  Plaintiff appeals to "school bus monitor positions advertised in Kansas [which] indicates that the total hours worked is 20 per week with summers off, requires the ability to tolerate hot, cold, diesel fuel fumes, and the individual "Must lift wheelchair dependent children during emergency situations."  Id. at 12-13.  Regarding the usher job, Plaintiff argues, "it is hard to imagine an usher being able to tear a ticket stub or change advertising displays with one hand" and it "is also generally less than full-time."  Id. at 13.  Plaintiff argues the photofinishing counter clerk job requires the employee "to load the film into

equipment for processing" and "would be extremely difficult, if not impossible to do with one upper extremity."  (Pl. Br. 14).

Plaintiff also argues the jobs testified to by the VE and relied upon by the ALJ do not exist in significant numbers in the national economy.  Plaintiff argues that of the job information of which the SSA takes administrative notice, the information from the Bureau of Labor is the best available data, but "still falls short in providing the number of jobs identified in the DOT [Dictionary of Occupational Titles]."  (Pl. Br. 15).  He argues the Bureau of Labor Statistics (BLS) provides a number of 17,960 as the number of jobs for school bus monitors and protective service workers which includes

> jobs such as: law enforcement, fire fighters, police, detectives, correctional officers, inspectors, forest fire and prevention specialists, bailiffs, jailers, fish and game wardens, parking enforcement workers, police and sheriff patrollers, transit and railroad police, animal control workers, security guards, gambling surveillance and investigators, crossing guards and flaggers, lifeguards, ski patrol and other recreational workers, and warrant servers.

Id. at 15-16 & nn.7 & 8.  Plaintiff argues, based on this information, that the VE's testimony of 17,000 school bus monitor jobs available is inaccurate and "there is no evidence as to whether, or how many constitute full-time employment.  Obviously, few, if any, public schools are in session the entire year."  Id. 16.

As to the usher job, Plaintiff argues, based on O*NET (Occupational Information Network) data from the BLS, that more than 50% of usher jobs require handling of which Plaintiff is not capable and "90% of these jobs are performed at less than 40 hours per week."  Id.  He then cites the unpublished case of Jaquez v. Saul, 840 F. App'x 246, 247 (9th Cir. March 17, 2021), wherein the Ninth Circuit remanded because it only knew that

9,020 ushers work at least 40 hours a week and did not know the number of such jobs providing lesser but substantial gainful activity levels.  (Pl. Br. 16-17).

For the photofinishing counter clerk job, Plaintiff alludes to the Occupational Outlook Handbook and NAICS (North American Industry Classification System) and argues that photofinishing counter clerks make up only 15 jobs, the job has been absorbed by or included within other job titles, and it includes activities of which he is incapable.  Id. 17-18.

The Commissioner argues that the ALJ applied the correct legal standard at step five of the sequential evaluation process and appropriately relied upon the testimony of the VE to find that three occupations comprising 60,000 jobs of which Plaintiff is capable is a significant number of jobs available in the national economy.  She argues that the ALJ fulfilled his obligation pursuant to SSR 00-4p and determined the VE testimony was consistent with the DOT.  (Comm'r Br. 14).  She argues that substantial record evidence supports the ALJ's step five finding.

She argues the DOT provides reaching, handling, fingering, and feeling are not required for a school bus monitor and for the other occupations provides that those activities occur only occasionally.  She points out that, as Plaintiff concedes, the DOT does not differentiate between unilateral and bilateral use of the hands and arms for these activities.  Id. at 15.  She points to the VE testimony that available occupations were very limited because of Plaintiff's limitation from bilateral reaching and handling but that with that limitation Plaintiff can perform work as a school bus monitor, usher, and photofinishing counter clerk.  Id.  The Commissioner argues that in a situation similar to

that presented here, the Tenth Circuit found no error where the jobs required frequent reaching but the claimant was limited to occasional overhead reaching because the DOT and the Selected Characteristics of Occupations (SCO) do not differentiate between overhead reaching and reaching elsewhere.  (Comm'r Br. 15-16) (citing Segovia v. Astrue, 226 F. App'x 801, 804 (10th Cir. 2007) ("In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case.").  She argues, "even if there were a conflict in this respect, the expert explained that her testimony was based on her experience." Id. 17 (citing R. 72).  She continues, "the ALJ elicited a reasonable explanation for the conflict before relying on the vocational expert's testimony, as was appropriate." Id. (citing SSR 00—4p, 2000 WL 1898704 *2 (SSA Dec. 4, 2000) ("[i]nformation about a particular job's requirements . . . may be available . . . from a [vocational expert's] experience in job placement or career counseling.")).

The Commissioner points out the VE's testimony that there are three occupations with a total of 60,000 positions available in the national economy and argues that "testimony constitutes substantial evidence in support of an ALJ's findings at step five." Id. 18.  She argues Plaintiff now asks the court to find the jobs do not exist in substantial numbers despite the VE's testimony at the hearing.  Id. 19.  She concludes her argument,

> While Plaintiff seeks to step into the role of vocational expert by reviewing publications and offering his layperson opinion of what those publications say, "[t]he whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof."

26

Id. (quoting Rogers v. Astrue, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (citations omitted)).

In his Reply Brief, Plaintiff reiterates his argument the ALJ did not adequately resolve the conflicts between the VE's testimony and "the DOT, the agency's regulations and common sense." (Reply 5). He points out that his attorney challenged the VE at the hearing but argues, "her protests were ignored." Id. He argues the VE testified "a school bus monitor would have to push a disabled child's wheelchair onto a lift which by definition involves reaching and handling. This negates the SCO's description of the job requiring no reaching, handling or fingering—which seems impossible for any employment." Id. 5-6 (citation to the record omitted). He notes the VE's testimony of Branson and Las Vegas being two potential places where an usher might obtain employment at the substantial gainful activity level, and reiterates his argument, "The Ninth Circuit reversed on this issue, finding that there may not be a significant number of usher jobs in the national economy constituting substantial gainful employment." Id. at 6. Plaintiff points out the VE acknowledged job availability for an individual with his age, experience, and RFC would be very limited vocationally. He concludes his argument, "The VE was equivocal as to whether her job numbers were reflective of full-time employment. She stated, 'Yes, as best I can tell. Yes.' Plaintiff challenged these job numbers at [the] hearing but neither the VE nor the ALJ resolved these obvious discrepancies." Id. (citation to the record omitted).

A. **The ALJ's Relevant Findings**

The ALJ found Plaintiff is unable to perform his past relevant work as a tractor-trailer driver.  (R. 28).  She found that Plaintiff was a person closely approaching advanced age on his alleged disability onset date and had a limited education.  Id.  She credited the VE's testimony and found Plaintiff is able to perform the jobs of a school bus monitor, an usher, and a photofinishing counter clerk.  Id. 29.  She explained:

> At the hearing, the claimant's representative argued that the claimant was not able to perform some of these jobs due his lack of an ability to use his right arm.  However, the vocational expert supplemented her testimony with professional experience for matters not specifically addressed by the DOT and the Selected Characteristics of Occupations, including the unilateral manipulative limitations.  The undersigned finds that the opinion of the vocational expert is persuasive.

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule [202.11].

Id.

## B.    Analysis

To the extent Plaintiff argues he cannot perform the jobs relied upon because he has no use of his right upper extremity, that argument has already been rejected above, and the court will not repeat its analysis here.

In arguing the jobs presented by the VE and relied upon by the ALJ do not exist in significant numbers, Plaintiff argues the Bureau of Labor's data is the best available information and relies on evidence allegedly from the Bureau of Labor Statistics (BLS) (Pl. Br. 15-16), the Occupational Outlook Handbook (OOH), NAICS, CBP (County

Business Patterns), and "a labor market study in 1991, using the SSA's acceptable resources for estimating jobs." (Pl. Br. 17). There are several problems with these arguments.

 First, Plaintiff cites no authority for his assertion Bureau of Labor data is the best available. Moreover, he has provided no useful information to the court which is verifiable as to its source, authenticity, or accuracy. His citation to BLS data on the number of school bus monitor jobs, id. at 15 n.7, leads only to a BLS web page titled "Occupational Employment and Wage Statistics" which does not provide the information cited. Plaintiff's citation to information regarding the usher job, id. at 16 n.10, leads to a web page in O*NET OnLine entitled "Ushers, Lobby Attendants, and Ticket Takers" which, again, does not provide the information asserted. Plaintiff's assertions of information regarding counter clerk jobs from the OOH cites a web page with the URL: http://californiasocialsecurityattorney.blogspot.com/search?q=counter+clerk and appears to be the web page of an attorney representing Social Security disability claimants in courts nationwide. But the court is unable to discern in this web page information which is actually that of the OOH. Plaintiff has a two-paragraph quotation on page 17 which he attributes to NAICS, but he provides no verifiable citation to NAICS. The footnotes relating to that quotation contain URL's leading to the attorney discussed above, (Pl. Br. 17 n.12) and to a "Labor Market Study" by Trevor Duncan, Strategic Consulting Services, Inc. Id. 17 n.13.

 Lastly, and most importantly, the Commissioner has promulgated regulations by notice and comment rulemaking explaining that she takes administrative notice of the

DOT as reliable job information. 20 C.F.R. §§ 404.1566(d), 416.966(d).  Moreover, in its

Policy Interpretation regarding using occupational information at steps 4 and 5 of the

sequential evaluation process, the SSA has explained that "[i]n making disability

determinations, we rely primarily on the DOT (including its companion publication, the

SCO) for information about the requirements of work in the national economy," and that

it may also use VEs "to resolve complex vocational issues." SSR 00-4p, 2000 WL

1898704, *2 (Dec. 4, 2000). And, while SSR 00-4p requires that an ALJ must investigate

and elicit a reasonable explanation for any conflict between the DOT and SCO and the

VE testimony, it does not require the ALJ to resolve conflicts between VE testimony and

other vocational publications or information.  Poe v. Comm'r of Soc. Sec., 342 F. App'x.

149, 158 (6th Cir. 2009).

 The VE testified these three occupations consisting of 60,000 jobs in total are

available to an individual such as Plaintiff.  Plaintiff objected to the VE testimony and the

ALJ addressed that objection as quoted above but found the VE testimony persuasive and

adopted it.  The court finds no reversible error.

 **IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

 Dated September 26, 2022, at Kansas City, Kansas.


     s/ John W. Lungstrum
     **John W. Lungstrum**
     **United States District Judge**